IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Center for Biological Diversity and Maricopa Audobon Society,<br><br>　　　　Plaintiffs,<br><br>v.<br><br>United States Fish and Wildlife Service,<br><br>　　　　Defendant. | No. CV-19-00354-TUC-JAS<br><br>**ORDER** |

Pending before the Court is the Center for Biological Diversity's and Maricopa Audobon Society's ("Plaintiffs") motion for summary judgment.[1] For the reasons stated below, the motion is denied.[2]

**BACKGROUND**

***The Fish and Wildlife Services' Undisputed Violation of a Statutory Deadline in the Endangered Species Act***

Plaintiffs have filed a motion for summary judgment as to Defendant United States

---

[1] As a general matter, summary judgment is appropriate where "there is no genuine issue as to any material fact." Fed. R. Civ. P. 56(c). A genuine issue exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). For the most part, the facts of the case as to Plaintiffs' motion for summary judgment are undisputed. *See* Defendant's Response to Plaintiffs' Statement of Facts. Rather, the primary disputed issue in this case is simply the proper remedy for Defendant's undisputed violation of a statutory deadline in the Endangered Species Act.

[2] Because the briefing is adequate and oral argument will not help in resolving this matter, oral argument is denied. *See Mahon v. Credit Bureau of Placer County, Inc.*, 171 F.3d 1197, 1200-1201 (9th Cir. 1999).

Fish and Wildlife Service's ("FWS") failure to comply with 16 U.S.C. § 1533(b)(3)(B) of the Endangered Species Act ("ESA"). This provision of the ESA requires the FWS to issue a finding regarding the threatened or endangered status of a species within 12 months of receiving the petition ("12-month finding"). Defendant admits to violating this provision. As an interested party under 16 U.S.C. § 1533(3)(A), Plaintiffs originally filed a petition to list the Arizona Eryngo ("Eryngo") as endangered with the FWS on April 2, 2018. The FWS received the petition on April 9, 2018. The FWS failed to produce the 12-month finding by April 9, 2019 as required by 16 U.S.C. § 1533(b)(3)(B) of the ESA. On July 12, 2019, Plaintiffs filed suit against the FWS for the deadline violation.

The ESA does not list remedies for violations, and both parties acknowledge that this Court may exercise its discretion to determine a proper remedy. Plaintiffs wish to receive a determination of the status of the Eryngo within 30 days of this Court's Order as to the dispute addressed herein, while the FWS argues that the Court should require a determination by February 26, 2021.

### *The Eryngo*

The Eryngo is a flowering plant in the carrot family that grows in desert wetlands known as cienegas. The Eryngo relies on groundwater in the cienegas for survival. It grows in only four isolated locations, two of which are located in southern Arizona. Plaintiffs argue that because of unsustainable groundwater pumping, overgrazing, climate change, and various other causes, the Eryngo is in need of protection under the ESA.

**DISCUSSION**

As referenced above, the current dispute requires the Court to exercise its discretion in determining an appropriate remedy for the violation of a non-discretionary statutory deadline in the ESA. As discussed in more detail below, it would not be appropriate to require the FWS to issue a 12-month finding of the Eryngo within thirty days of this Order as urged by Plaintiffs; in addition to being impractical from a fiscal and administrative standpoint, it would also be disruptive to species that may require more urgent determinations under the current FWS Workplan. As such, Plaintiffs' motion for summary

judgment shall be denied.

The Court may exercise broad equitable discretion when determining an appropriate remedy for a statutory deadline violation. *See Dolan v. United States,* 560 U.S. 605, 610 (2010). An appropriate remedy should serve the interests of justice in light of the particular facts and circumstances of the case. *See id.* It is appropriate for the Court to consider the good faith efforts of Defendant, as well as the circumstances leading to the statutory violation. *See Nat. Res. Def. Council v. Train,* 510 F.2d 692, 713 (D.C. Cir. 1975). Measuring the particular circumstances of a given case, it would be inequitable and inappropriate for the Court to order an injunction with which the Defendant may not feasibly comply. *See Sierra Club v. Thomas,* 658 F. Supp. 165, 172 (N.D. Cal. 1987). The circumstances of this case demonstrate that it would likely be infeasible for the FWS to issue a 12-month finding of the Eryngo within thirty days of this Order that complies with all other statutory requirements; Plaintiffs' proposed remedy would be inequitable and inappropriate.

The FWS has limited funds, a heavy workload, and rigorous scientific review processes to uphold that render a prompt 12-month finding infeasible. Congress allocates funds to the FWS for petition findings, listing determinations, and designation of critical habitat on a yearly basis. For the fiscal years of 2019 and 2020, the FWS was given $18,318,000 and $20,318,000 respectively. Because of the limited funding, the FWS can only complete so many listing determinations in any given fiscal year. Portions of the total funds are allocated to each of eight regional offices based on their estimated need in proportion to the whole. It is estimated that the Southwest Region, which includes Arizona, will receive slightly more than 1.6 million for the fiscal year of 2020.

In addition to limited funding, the FWS is tasked with a workload that includes responding to each listing petition. *See* 16 U.S.C. § 1533(b)(3)(B). The workload is substantial: from 2007 to 2010, 28 listing petitions were brought on behalf of 1,187 species. In 2009 and 2010, twenty lawsuits were filed against the FWS regarding 800 listing deadlines. In 2015 and 2016, the FWS initiated a comprehensive workplan ("Workplan")

in an effort to better organize and prioritize listing petitions. Under the Workplan, each listing petition is categorized into one of five "bins" depending on the level of urgency for the species in question, with "bin one" being the most urgent. Each listing petition must receive a 12-month finding that includes one of three possible outcomes: (1) the petition is warranted, (2) the petition is not warranted, or (3) the petition is "warranted but precluded" due to actions that require higher priority. *See* 16 U.S.C. § 1533(b)(3)(B). There are approximately two-hundred-and-twenty-three 12-month petition findings included in the current 2019-2023 Workplan. The FWS 2020 Workplan plans to address sixty-three 12-month findings in addition to 11 proposed listing rules for 2020, with the Southwest Region shouldering the second largest workload in the country (approximately 15 percent of the total). If a species is facing an emergency that poses a "significant risk," the Secretary of the FWS is permitted to issue regulations and listings without following the normal protocols. *See id.* at § 1533(b)(7). In the case of the Eryngo, Plaintiffs' petition did not request an emergency listing. Furthermore, based on the record before the Court, an emergency listing for the Eryngo is unwarranted at this time.

The FWS has categorized the Eryngo into "bin two," meriting the second highest priority. More than a year after the FWS received the listing petition for the Eryngo, on April 26, 2019, the FWS published a finding in the Federal Register stating that the Eryngo may warrant threatened or endangered status. Before the FWS can officially make a final determination regarding the listing status of the Eryngo, however, a "status review" will be conducted to ensure that the determination is made "solely on the basis of the best scientific and commercial data available." 16 U.S.C. § 1533(b)(1)(A). The status review includes analyses of the particular species regarding the following criteria, as required by statute: "(A) the present or threatened destruction, modification, or curtailment of its habitat or range; (B) overutilization for commercial, recreational, scientific, or educational purposes; (C) disease or predation; (D) the inadequacy of existing regulatory mechanisms; or (E) other natural or manmade factors affecting its continued existence." *Id.* at § 1533(a)(1).

This status review requires substantial time, resources, and money. Because this is

the first time the Eryngo has been considered for listing, it is considered a "new start" species, which requires a Species Status Assessment ("SSA") as part of the status review. To carry out the SSA, the FWS collects the best available scientific data, conducts research about the species' habitat and the potential dangers it faces, and predicts how the species will react to future developments. Once a status review is complete, the FWS must determine whether listing of the Eryngo is warranted under current laws and regulations. If the FWS determines that listing is appropriate for the Eryngo, a 12-month finding will be drafted, reviewed, and published.

The review process is rigorous and requires time. The draft is reviewed by the regional office and the regional director, and also by an attorney in the Regional Solicitor's office. It is then reviewed by the Branch Chief for Domestic Listing, the Chief of the Division of Conservation and Classification, the Assistant Director for Ecological Services, and the Service Director who has the authority to sign off on the draft. The signed draft is then reviewed by the Assistant Secretary for Fish and Wildlife and Parks, and lastly, by the Executive Secretariat who may authorize the final clearance for publication in the Federal Register. This review process takes a minimum of three months to complete. Under the current Workplan, the FWS plans on submitting the 12-month finding for the Eryngo to the Federal Register for publication by February 26, 2021.

The FWS argues that limited funding, a heavy workload, and a rigorous scientific review process render a 12-month finding within 30 days of this Order unworkable and infeasible. The Court agrees. Even if it were workable or feasible for the FWS to publish a 12-month finding within 30 days of this Order, the Workplan would be disrupted at the expense of higher-priority actions within the Southwest Region. The Arizona Ecological Services Field Office ("ESFO") within the Southwest Region is largely responsible for responding to the listing petition for the Eryngo. The ESFO has priority workload actions that must be taken care of as quickly as possible, including the listing actions of six species and eighteen other actions. If the Court were to order the Eryngo's 12-month finding to be published within 30 days of this Order, these priority actions would suffer further delay as

a result.[3]

As the FWS has limited funding, a heavy workload, rigorous scientific processes to uphold, and priority actions would be further delayed if the Court ordered a 12-month finding to be issued as to the Eryngo within 30 days of this Order, Plaintiffs' motion for summary judgment is denied.

## **CONCLUSION**

Accordingly, IT IS HEREBY ORDERED as follows:

(1) Plaintiffs' motion for summary judgment (Doc. 17) is denied.

(2) The FWS shall submit a 12-month finding as to the Eryngo to the Federal Register for publication by no later than Feb 26, 2021.

Dated this 24th day of November, 2020.

Honorable James A. Soto
United States District Judge

---

[3] The Court notes that Plaintiffs argue that the heavy workload of an agency should not be an excuse for failure to comply with a statutory deadline, and cite to some district court cases that have ordered 30-day determinations after failed deadlines. *See Ctr. For Biological Diversity v. Norton,* 304 F. Supp. 2d 1174, 1180 (D. Ariz. 2003); *Save Our Springs v. Babbitt,* 27 F. Supp. 2d 739, 749 (W.D. Tex. 1997). The Court is not persuaded by these cases; they were decided under different circumstances before the current Workplan was established by the FWS – the Workplan now addresses these listing decisions in a more organized and logical manner in light of the most urgent needs of the species at issue. Since the FWS initiated their comprehensive Workplan in 2016, district courts have been less likely to order specific performance with swift and unfeasible deadlines, taking into account "the Service's current staffing, workloads, budget, and competing agency priorities, including other court-ordered deadlines." *Ctr. for Biological Diversity v. U.S. Fish & Wildlife Serv.,* 2018 WL 6067546, *6 (N.D. Cal. 2020); *see also Citizens for Pennsylvania's Future v. Wheeler,* No. 19-CV-02004-VC, 2020 WL 3481425, *10 (N.D. Cal. 2020).